You may please the court. My name is Jim Ball from the state of Idaho. I would like to reserve two minutes if I could for rebuttal. In this case, just for giving the court an idea of where I'm going on this argument, is that I'm going to essentially keep most of my arguments towards the sufficiency of the evidence argument and rely on my brief in terms of the constitutional argument. Going through this case, I think the issue is one is the agreement issue in terms of conspiracy law. As the court knows, there needs to be agreement, at least in terms of this case, that there was an agreement to deliver methamphetamine. Tell me if I have this right, counsel. It looks like there's plenty of evidence for possession with intent to distribute, but they didn't charge him with that. Instead, they charged him with conspiracy, and your argument is there's no evidence of any agreement. He's distributing on behalf of the conspiracy. Do I have it right? Correct. I believe, Judge, exactly where I'm going with this, and I think that's the issue here, is that I think the state has provided sufficient evidence in terms of the intent to distribute and the overt act element, so those are non-issues here in front of the court. I think this comes down simply to an agreement issue. When I look through the law in terms of the agreement issue, I think Judge Kaczynski, in Ramirez's case, essentially laid out the area of the law in terms of agreement, and I just essentially, I will state it to the court, what Judge Kaczynski says, and to find an agreement, there needs to be evidence of prolonged activity pursued in the course of sales, but what he also goes on to say that it needs to be coupled with the seller's knowledge and the shared stakes in the buyer's ventures. Does that add an element to what's required under conspiracy? I don't. When you look at the jury instructions, is there anything that supports that? You know, I've asked myself that question, because you look at the model jury instructions, that doesn't really flush out. It doesn't, does it? It doesn't really flush out, and so in terms of, when I go back and looked at that, I looked at that Lennock case, so I think a lot of that information came out of that Lennock case, and it looked like, to me, what Judge Kaczynski was doing is just expanding on what Lennox essentially talked about in there and give kind of a clear-cut definition of what conspiracy would be, and so to me, the fact that there needs to be shared stakes, and that's what I've at least asked the court to really consider in looking at this case and looking at the record, if there's any evidence, if there are any shared stakes of this conspiracy. The government did provide, I believe, sufficient evidence, at least in terms of the prolonged sales. But couldn't there be someone actually, you had evidence of an agreement, and someone witnessed an agreement between someone like Mr. Sanchez, someone like Mr. Loveland, and no shared stakes, no sharing of the profits, and that would be a conspiracy, would it not? I believe it would, yeah. I think that in that instance, you'd have the direct evidence of a conspiracy, and it's just a direct evidence of agreement, having someone making that, you know, I was there, I witnessed it, and I had this agreement. And in this case, there's no direct evidence that there's any direct evidence. So I'm just trying to understand, so in circumstantial cases, we allow for an additional element or require an additional element of shared stakes. That's basically what the position we're in now, is that correct? I would say that in terms of a circumstantial case, which this is, it's not a direct evidence case, is that if you look at, I guess the best way for me to explain that is when I look at the Lennox case, and that was the one that was essentially reviewed in my brief, because that's the same type of case. It was no direct evidence in that case. And a lot of the law that's established in the Ninth Circuit comes from that case. And because most of those cases dealt with large amounts of drugs or a prolonged time of selling them. And in those cases, the law essentially was that the sale is not proof of conspiracy, and that comes out of the Lennox case. And also it comes out that the sale of long or the large quantities of drugs comes out of the Lennox case is not evidence of conspiracy. It's an inference of a conspiracy. But as the Lennox case states, the inference does not hold the day. And what it looks like, from what Judge Kaczynski wrote in his opinion, was he essentially kind of fleshed that out as saying, if you're going to have a circumstantial case, the fact that there are drug sales is not going to cut it. The fact that maybe there's drug sales and in addition a large quantity is not going to cut it. There's got to be something more. And that's what Lennox talks about. There's got to be something more. And it looks like that's what Judge Kaczynski was saying in his opinion, was something more would be at shared stakes. So someone could sell 50 kilos of cocaine in the course of a month for, let's say, you know, 20 times. And that's not going to be enough to show circumstantial evidence of a conspiracy with the person who he's purchasing it from of a conspiracy or some sort of implied agreement here. Yes. And I agree with you. And I'm looking at footnote five of the Lennox case. In that footnote, essentially, the Ninth Circuit essentially says, agreeing that the mere fact that Devitt sold an alleged co-conspirator a quantity of cocaine too large for the co-conspirator's personal use, and therefore must have known the alleged co-conspirator was planning to resell it, is insufficient to prove conspiracy. The sale of large quantities of controlled substances without more cannot sustain a conspiracy conviction. And it goes on to say the huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself is not enough to convict a defendant. And so it goes on to say that that's the law in the Ninth Circuit. And that's why the Ramirez case, the recent Ramirez case, talked about that. Even though you might have a large quantity, there's got to be something more. And that something more is the fact that there's some type of agreement of a shared stake. And I've just referenced for the Court. Go ahead and finish your thought. I have a question. Thank you very much, Your Honor. And so I was going to say I referenced the unpublished opinions at DiNardo case where it picked up on this Martinez analysis and it said, well, the shared stakes that we're looking for in cases like this, if there's a front, and I was going to mention that in yours, if there's a front in that large kilo, it's like I'm going to give you that much kilos, but it's a front, and you're going to pay me some of that profit, that's going to show your shared stakes. And one of the things, too, that they talked about was the profit at the point of sale, and that's what happened in this case with Mr. Loveland and Sanchez, that every time that he would purchase this methamphetamine, it was up front with cash. Never was there any profit or was any of there ever a front. Mr. Sanchez never helped Mr. Loveland in distribution, and there was never any concert or working with Mr. Loveland to find out if he can help him bring more buyers or anything of that nature. And so my review of the complete record shows that there's no evidence of any type of shared stakes at all that's in the record. The question I have, based on your quotation of the footnote five, I can see how that would apply if there was a sale of more than personal use, and that's all the evidence you have. But what about an arrangement like this, which was long-term, and it was an agreement to continue supplying more than personal use, knowing that there were a number of customers that this individual was supplying based on what was sold to him? I would just respond because there's no evidence in the record that there was an agreement between Mr. Sanchez and Mr. Loveland. There's an inference of it, but there's no evidence. There's no direct evidence that there ever was an agreement between those two guys. There is evidence that there was continued delivery of more than personal use over a period of time. Right. Was there evidence that they shared customer lists? No. And I'm sorry, did I answer your question, Your Honor? I'm not sure if I answered it or not. Do you want to reserve? I would like to reserve that rest of the time. Thank you. Thank you very much. Good morning, Your Honors. My name is Lynn Lamprecht. I'm an assistant United States attorney with the District of Idaho, and I, of course, am representing the government in this case. The government responds that while there may not have been explicit evidence in this case to show an implied agreement between Sanchez, the seller, and Loveland, the buyer, that Loveland would resell, there is certainly the law understands that explicit agreements can rarely be proved in drug cases. Counsel, I don't really understand where that gets to the point we need to resolve. As I recall, when I used to instruct juries on conspiracy, one of the elements was there had to be an agreement. And it seems like that's the critical thing in this case. And I don't understand why selling somebody something, knowing he's going to resell it, amounts to an agreement. He can do whatever he wants with it, and he can sell it on his own account, keep it in inventory if he thinks the price is going to go up. Frankly, I was thinking of a non-criminal analogy. Sam's Warehouse, at least in my town, opens an hour early for business people so that they can buy their inventory and supplies in shorter lines. Also, I knew a fellow that ran a small barbecue restaurant, and I'd see him in the grocery every Saturday. And he was buying way more corn and ribs and beef than he could possibly eat. He was buying the food for his restaurant. Any checker who thought about it would recognize that. But there wouldn't be any joint venture or partnership or shared responsibility. Likewise here, I asked about the customer lists. If the conspirators give this fellow Loveland a customer list and say, you sell to these people, well, that's an agreement. If he even possessed a customer list that the conspirators had given him, it would be circumstantial evidence of an agreement. If they gave him a commission, such as you give a salesman, even if the salesman keeps his customer list secret, that would be evidence of an agreement. To me, this looks like just a straight down the middle possession with intent to distribute case, and it looks like he buys from a wholesaler, and they're at arm's length. I don't get what the evidence of an agreement is, and you need it under those two Ninth Circuit cases that your adversary cited. Your Honor, the other Ninth Circuit cases cited by the government in its brief note that a single sales or individual sales, while they are not necessarily a conspiracy, when there is this sort of an agreement in which the parties are involved. What agreement? You could have an agreement and a conspiracy with no sales at all. The conspirators get together and they say, you sell to A, B, and C, and the guy is kind of shy. He doesn't like to knock on doors. He never sells an ounce. He's still a conspirator, but you need the agreement. The agreement in this case, Your Honor, is shown by the prolonged relationship in the parties in which the success of one depends on the success of the other, and this is where the parties have engaged in regular and frequent purchases and sales of distribution amounts of methamphetamine over a period of six months. Back in the day, Quill office supplies depended on my purchases and other lawyers' purchases of our paper and supplies from Quill for years. Wait, Your Honor. I'm sorry. I didn't have any agreement. Your purchases were not contingent on occurring every two weeks, as these were, and your purchases were not illegal. That distinguishes, certainly, I think, this case from your hypothesis. No, it doesn't. An agreement to commit an illegal act, one of the elements is it has to be an illegal act. Another is it has to be an agreement, and they're distinct. Well, what happens- You can have an agreement whether it's to commit a legal or an illegal act, and it's agreement we're focusing on. Because of the prolonged relationship of the parties, this is a continuing agreement, not just a simple agreement to possess with intent to distribute, but a continuing agreement to buy, resell, pay off, and- Was there, what was there that showed an agreement to resell? The agreement to resell was that there was, well, practically speaking, Mr. Loveland had to come up with $2,400 in cash every two weeks to pay Mr. Sanchez to continue their ongoing relationship. Sure. He was obviously going to resell because of the quantities and frequency and price. And the case law says that when this occurs, the jury, this is a jury, this is just whether the jury can infer this now. A jury can, in fact, infer that there was an implicit agreement that existed between the buyer and the seller, because Sanchez, as an experienced drug dealer, had to know that Mr. Loveland had to resell these amounts to come up with the cash. He demanded cash on payment, and Loveland knew that if he didn't give him the cash, he couldn't get any more product, and the venture would end. And Sanchez had to have that cash because he had to resupply, which he did six times during the course of this conspiracy, to continue to meet Loveland's needs. And one of the provisions in this conspiracy was that Loveland called Sanchez when he wanted the meth. So you think that if somebody is a big customer on a regular basis for a long time, that makes them a co-venturer with the seller? What the case law says, Your Honor, is that this kind of a prolonged agreement over a period of time that involves frequent distributions between the buyer and seller allows a jury to infer that there was an implicit agreement in which the seller understood that the buyer would be reselling in order to do distributions, in order to continue the relationship. What do we do about the, I mean, we're guided by Ramirez here and the shared stake, so what's your best argument that shared stake was exhibited here to support the conspiracy? And I understand you may disagree with Ramirez, but it's apparently our law, so what do we do? Well, the shared stake in this agreement is showed by a number of factors that courts use to determine whether this sort of implicit agreement existed. First is the length of the affiliation, and you need a prolonged relationship. And in this case, Loveland was making regular purchases of distribution amounts of methamphetamine from Sanchez every two to three weeks, or just really, I think two to three weeks a month, almost every other week for a period of six months. There was an established method of payment, and courts find this important, and that is that every single delivery was two ounces. Every single delivery required payment of $2,400 in cash. How does that show shared stakes? Well, shared stakes are showed by a number of factors. You don't need all of them. What are the most compelling ones here? The ones that I'm talking about, Your Honor. Those are the ones. There's length of affiliation, established method of payment, extent to which the transactions are standardized, a demonstrated mutual level of trust, and an ongoing reciprocal interest between the buyer and the seller. So moving on, Loveland always received the extent to which the transactions were standardized. They were all the same cost. They were all the same amount. Loveland always received delivery at his house, and Loveland always called when he needed more. You say that pain in cash is evidence of, you know, this agreement. Oh, I'm sorry. We have other cases that say, well, fronting shows this trust relationship. So, I mean, either way, it sounds like the government's covered here. Thank you. I think, Your Honor, that's correct, because he had to pay the $2,400, whether he paid for the first one or was fronted the first one. I'm being sarcastic. Oh, well, I think you are right, though. Whether he was fronted the first one, and counsel argues there was no evidence that he was, I'm going to argue that there was certainly evidence in a minute, but even if he did pay for the first delivery sometime prior to November of 2011, the first time he ever dealt with Sanchez, he still had to come up with that $2,400 cash every single time he wanted more, and he wasn't going to get any more unless he did. And so he was still, that obligation was still his. Now, on a front, there's what you have in addition is a level of trust between the buyer and seller. In this case, the evidence showed that that was Sanchez's business practice, to deal with the clients on a front. He dealt with Mr. — the evidence showed that he dealt with Mario Martinez, who started to be his customer in 2010, on a front, and every time after that, whenever Mr. Martinez got that amphetamine, which was as often as Mr. Loveland, he had to pay cash to pay off his debt. The same is true for Mr. Vertner. Mr. Vertner became Sanchez's customer. Wait a minute. I didn't understand what you just said. Did you just say the conspiracy fronted drugs to some of its other members but did not front to this fellow Loveland? No, sir. Nevertheless, it's the same thing because the ones they fronted to had to pay their bill before they got their next delivery? I'm saying it's close to the same thing, but I'm saying in a front situation, there's trust implied between the buyer and seller, and I'm arguing now that the evidence in this case shows that Sanchez's practice when dealing with his customers was to require them to deal with him on a front. Well, fronting means you sell the inventory on credit. It's like Broyhill Furniture selling the local furniture store furniture on credit, and then when the furniture store sells the furniture, they have to pay Broyhill, and if they don't, they don't get more shipments. That's what fronting is. But I understood you to be saying the conspiracy fronted to other people but not to Loveland. Well, what I'm trying to explain now is that there was no direct evidence as to how Loveland started his dealings with Sanchez. So you don't have any fronting with this? Yes, sir, I believe we do because the evidence shows that it was Sanchez's practice to front methamphetamine to potential customers to get them to be customers, and he did this with Martinez before he acquired Loveland as a customer. He did this with Vertner after he acquired Loveland as a customer, and what he fronted was just two ounces at a time. So every time they got another two-ounce delivery, they had to pay that outstanding debt on the front. Then they'd get some more, and then they'd still owe him that $2,400. When you say they, you mean two other guys, not Loveland? I'm saying Loveland did exactly the same thing as the other two guys. He had to pay $2,400 every time in cash on delivery. So I think there's a reasonable inference that Loveland also was working on a front because that was Sanchez's method of recruiting customers. Thank you. Is my time up? It is. Okay, thank you, Your Honor. Mr. Ball, I'll give you one minute. Great, thank you, Judge. I just want to point out I think counsel is reiterating at least the shared stakes is one of sales, and so sales to other co-conspirators, and I just wanted to point out in terms of what the law is on that is that the conspiracy, and this I'm looking at the Lena case, a conspiracy requires proof of agreement to commit a crime other than the crime that consists of sales itself. And it goes on to state that were the rule otherwise, every narcotics sale would constitute a conspiracy, and so the fact that there are sales and all these sales and many sales just shows that there is a sale, not that there is agreement. And that is the law in the Ninth Circuit, and I'm looking at the Lena case when I'm talking about that. In terms of the shared stakes, I think what counsel has reiterated to the court are not shared stakes. I think Judge Kaczynski pointed out in there that shared stakes essentially means that the government needs to present evidence indicating that the co-conspirators that had some kind of involvement in the co-conspirators' drug sales, and that's what your honors were talking about in terms of a list or something that shows there's some type of agreement. And so to me, I think the law is very clear that there needs to be an agreement, and that agreement needs to have some type of shared stakes, and I don't see any shared stakes. There's nothing that I see at all in the evidence that shows there was something shown that Mr. Sanchez was directing Mr. Loveland's drug sales at all. Thank you very much. Thank you both for your arguments here today. The case of United States v. Jim L. Loveland is now submitted, and we are adjourned. Thank you.
judges: Alarcon, Kleinfeld, Murguia